JOSHUA M. DICKEY
Nevada Bar No. 6621
**BAILEY❖KENNEDY**
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
Telephone: 702.562.8820
Facsimile: 702.562.8821
JDickey@BaileyKennedy.com

ADAM D. CHILTON
Texas Bar No. 24092255
(WILL COMPLY WITH LR IA-2 WITHIN 14 DAYS)
**POLSINELLI PC**
2950 N. Harwood, Suite 2100
Dallas, Texas 75201
Telephone: 214.661.5515
Facsimile: 214.279.2335
Adam.Chilton@Polsinelli.com

*Attorneys for Plaintiffs*
*Sunrise MountainView, Inc. d/b/a*
*MountainView Hospital; and Southern Hills*
*Medical Center, LLC d/b/a  Southern Hills*
*Hospital & Medical Center*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

SUNRISE MOUNTAINVIEW HOSPITAL, INC.
D/B/A MOUNTAINVIEW HOSPITAL; and
SOUTHERN HILLS MEDICAL CENTER, LLC
D/B/A SOUTHERN HILLS HOSPITAL &
MEDICAL CENTER,

Plaintiffs,

vs.

BLUE CROSS BLUE SHIELD HEALTHCARE
PLAN OF GEORGIA, INC.,

Defendant.

Case No.: 2:23-cv-00992

**COMPLAINT**

Plaintiffs, SUNRISE MOUNTAINVIEW HOSPITAL, INC. D/B/A MOUNTAINVIEW

HOSPITAL and SOUTHERN HILLS MEDICAL CENTER, LLC D/B/A SOUTHERN HILLS

HOSPITAL & MEDICAL CENTER (collectively "Plaintiffs" or "the Hospitals"), by and through

their attorneys, Bailey Kennedy, LLP, and complains of Defendant BLUE CROSS BLUE SHIELD

HEALTHCARE PLAN OF GEORGIA, INC. ("Defendant") as follows:

## STATEMENT OF FACTS

### A.  PARTIES

1.      Plaintiff, Sunrise MountainView Hospital, Inc. d/b/a MountainView Hospital ("MountainView") is a Nevada corporation with its principal office in Clark County, Nevada. MountainView is a citizen of the State of Nevada.

2.      Plaintiff, Southern Hills Medical Center, LLC d/b/a Southern Hills Hospital & Medical Center ("Southern Hills") is a Nevada limited liability company with its principal office in Clark County, Nevada. Southern Hills is a citizen of the State of Nevada.

3.      Defendant, Blue Cross Blue Shield Healthcare Plan of Georgia, Inc. ("BCBSGA"), is a corporation organized under the laws of the State of Georgia doing business in Nevada. BCBSGA's primary place of business is in the State of Georgia. BCBSGA does not maintain a regular place of business in Nevada and does not have a designated agent for service of process in the State of Nevada; however, it conducts business in Nevada. BCBSGA's home office is located at 740 W. Peachtree St., Atlanta, GA 30308. BCBSGA is a licensee of the Blue Cross and Blue Shield Association and is licensed to offer Blue Cross and Blue Shield branded health insurance plans in the State of Georgia. As explained below, BCBSGA's Subscribers are not confined to the State of Georgia, and routinely receive hospital services in other states, including Nevada, for which BCBSGA is responsible.

### B.  JURISDICTION AND VENUE

4.      This Court has personal jurisdiction over BCBSGA because it conducts substantial business in Nevada, and a substantial part of the events or omissions giving rise to the Hospital's claims occurred here. BCBSGA insures and administers health plans and health insurance policies that cover Nevada residents, including the BCBSGA Subscribers whom the Hospitals provided medical services to in this case. BCBSGA therefore does business in the State of Nevada for purposes of personal jurisdiction, and it is reasonably foreseeable that it would be brought into a Nevada court for its actions in connection with insuring and administering health plans that cover health services provided to its Subscribers in Nevada.

5.     This Court has subject-matter jurisdiction because this dispute is between citizens of different states (The Hospitals are citizens of the State of Nevada, and BCBSGA is a citizen of the State of Georgia) and involves an amount in controversy of greater than $75,000.

6.     Venue is proper in the District of Nevada pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district—as described below, the Hospitals in which medical services were provided to the BCBSGA Subscriber are located in Las Vegas, Nevada, which is located in the District of Nevada, thus making venue proper under 28 U.S.C. § 1391(b)(2). Venue is also proper under 29 U.S.C. § 1132(e)(2) because the Hospitals have asserted a claim under ERISA and the breach of the health plan at issue also took place (in part) in this judicial district, as BCBSGA denied reimbursement for medical services provided in the District of Nevada.

## C.    FACTUAL BACKGROUND

### I.    THE BLUECARD PROGRAM

7.     The Hospitals are acute care hospitals located in Las Vegas, Nevada. The Hospitals provide medically necessary services to Las Vegas and the surrounding communities.

8.     As part of its provision of medically necessary services to the communities it serves, the Hospitals are contracted with non-party Rocky Mountain Hospital and Medical Service, Inc. d/b/a Anthem Blue Cross and Blue Shield and HMO Colorado, Inc. d/b/a HMO Nevada ("Anthem NV") through a Facility Agreement (eff. Oct. 1, 2015) (as amended, the "Agreement"). The Agreement specifies the terms and conditions under which the Hospitals will treat patients with Blue Cross and Blue Shield ("BCBS") health plans (referred to in the Agreement as "Subscribers") and be reimbursed for that treatment. Under the Agreement, the Hospitals are entitled to be paid specified rates for the provision of medically necessary services to a Subscriber.

9.     The Agreement is far broader than the relationship between just the Hospitals and Anthem NV and Subscribers enrolled in an Anthem NV health plan, however. The Agreement applies to the treatment that the Hospitals provide to any Subscriber enrolled in a BCBS health plan, including Subscribers who have BCBS health insurance through another state's Blue Cross and/or

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1 | Blue Shield licensee (like BCBSGA). Thus, the Agreement applies to treatment that the Hospitals

2 | provide to BCBSGA Subscribers.

3 | 10. When the Hospitals treat a Subscriber who has a BCBS-branded health plan that is

4 | administered or underwritten by a Blue Cross (and Blue Shield) licensee other than Anthem NV, the

5 | Agreement still governs the Hospitals' provision of that treatment and reimbursement for it. The

6 | Hospitals' requests for payment (referred to as a "Claim") are handled through a system known as

7 | the "BlueCard Program." Under the BlueCard Program, the Hospitals submit their claims to Anthem

8 | NV for the services it provided to a Subscriber. Anthem NV then reviews the claim, determines the

9 | amount that would be payable under the Agreement for the services that the Hospitals provided to

10 | the Subscriber, and forwards the claim to the BCBS health plan that covers the Subscriber (referred

11 | to as the "Home Plan"). The Home Plan then applies the Subscriber's health benefits, makes

12 | coverage determinations, and either denies payment for the services, or approves payment. Anthem

13 | NV then transmits the Home Plan's decision and payment to the Hospitals. Importantly, the payment

14 | rates specified in the Agreement between Anthem NV and the Hospitals govern the amount the

15 | Hospitals are entitled to be reimbursed for the services provided to the Subscriber, regardless of

16 | whether that Subscriber is a participant in an Anthem NV health plan or another state's BCBS health

17 | plan.

18 | 11. As is explained in more detail below, this dispute involves the Hospitals' provision of

19 | hospital services to two BCBSGA Subscribers that are payable under the Agreement and for which

20 | BCBSGA incorrectly refused to pay the Hospitals, in whole or in part. The Subscribers received

21 | covered services from the Hospitals, and BCBSGA is obligated to approve coverage for those

22 | services under the Subscribers' respective health plan and issue payment to the Hospitals for same.

23 | **II. FACTS CONCERNS PRESENT CLAIMS**

24 | 12. <u>Patient No. 1- C.D.- Admitted June 6, 2017, Discharged June 9, 2017</u>: Patient C.D.

25 | presented to Southern Hills on June 6, 2017 for an elective surgery in the form of a left total hip

26 | arthroplasty. Objective diagnostic studies demonstrated the Patient had an obliteration of the

27 | superolateral joint space and abnormal subchondral sclerosis across the joint line in the acetabulum

28 | and the left femoral head. The surgical procedure was scheduled due to the Patient failing

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

conservative treatment for her left hip condition. The Patient's Orthopedic Surgeon performed the surgery. The Patient tolerated the procedure well and she was placed into observation status at Southern Hills. She progressed fairly well postoperatively until she reported on June 8, 2017, that she had pain and weakness in her hip as well as difficulty lifting her leg and ambulating. Given her change in condition, the attending physicians determined that the Patient should be admitted inpatient to Southern Hills overnight. The Patient was subsequently discharged with home health and physical therapy on June 9, 2017.

13.    Per Anthem NV's Medical Policy CG-SURG-53, an elective total hip arthroplasty will be considered to be medically necessary when any of several conditions are met, including avascular necrosis of the femoral head confirmed by imaging. The Patient's imaging showed she had an obliteration of the superolateral joint space and abnormal subchondral sclerosis across the joint line in the acetabulum and the left femoral head. As such, the left total hip arthroplasty performed by the Orthopedic Surgeon on June 6, 2017 was medically necessary based upon Anthem NV's Medical Policy.

14.    The procedure and two (2) days of post-operative observation were authorized by BCBSGA on June 6, 2017, pursuant to authorization number 0251175720. According to the Agreement, if initial authorization is given approving the medical services and the Hospitals provide the services in reliance upon such authorization, the insurance plan may not retroactively deny payment for these service unless the authorization was based on a material misrepresentation or omission about the Patient's health condition or its cause.

15.    Southern Hills timely submitted its claim for reimbursement for the services it provided to C.D. to Anthem NV on June 20, 2017 (Claim No. # 2017171CT2654),[1] which determined the amount payable to Southern Hills under the Agreement and transmitted the claim to BCBSGA to adjudicate coverage and benefits.  By remittance dated June 27, 2017, BCBSGA denied Southern Hills' claim for a purported lack of medical necessity. Southern Hills timely submitted a

---

[1] As is customary in the healthcare industry, the Hospitals submit claims to and receive payment information from insurers electronically.  An electronic remittance advise is issued from an insurer to a provider and contains, among other information, codes explaining the insurer's adjudication of the claim; it generally includes the same or similar information as the explanation of benefits sent to the Subscriber.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

first level appeal on July 3, 2017. On August 24, 2017, Southern Hills spoke with a representative of BCBSGA who advised that BCBSGA's denial was upheld for a purported lack of medical necessity. Thereafter, Southern Hills timely submitted a second level appeal on August 31, 2017. Southern Hills again called a representative of BCBSGA on September 28, 2017, who advised that BCBSGA had again denied the claim based on medical necessity and that all appeal rights had been exhausted.

16. To date, BCBSGA has never denied payment of the claim on the basis that Southern Hills proffered any material misrepresentation of information or omission regarding the Patient's health condition or the cause of her health condition. In fact, the only reason supplied by BCBSGA through its explanation of benefits ("EOB") and appeal denials has been "medical necessity". Thus, BCBSGA must reimburse Southern Hills for the authorized medical treatment in compliance with Section 2.21 of the Agreement.

17. With regards to the overnight inpatient admission of June 8, 2017 to June 9, 2017, this inpatient admission day was "medically necessary" under the Agreement due to her change in medical condition as demonstrated by her medical records. Although BCBSGA would only authorize observation status for this Patient after surgery, the 2017 Addendum E from the Centers for Medicare and Medicaid Services lists total hip arthroplasty as an "inpatient only" procedure. Furthermore, the overnight hospitalization of the Patient satisfied InterQual standards (evidence-based guidelines used to support clinical decision making in the healthcare industry). Based upon the foregoing, BCBSGA should remit payment to Southern Hills for the inpatient admission of the Patient from June 8, 2017 to June 9, 2017.

18. In sum, Southern Hills provided medical necessary services to C.D. and is entitled to payment in full for those services. According to the terms of the Agreement, Southern Hills is entitled to be paid $32,066.99 for the medically necessary services provided to C.D.

19. Patient No. 2- J.S.- Admitted June 1, 2016, Discharged June 23, 2016: Patient J.S. was transferred to the Emergency Department of MountainView from a Long Term Acute Care Hospital ("LTACH") on June 1, 2016 for shortness of breath, cough, and a possible hemithorax. She had a history of hypothyroidism, End Stage Renal Disease ("ESRD"), chronic debilitation secondary to a femur fracture, chronic back pain, diastolic congestive heart failure, severe depression, seizure

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

disorder, hypertension, diabetes mellitus type II, stroke/TIA, pancreatitis and morbid obesity. The Patient was found to have a near complete opacification left hemithorax compatible with underlying airspace disease and/or pleural effusion. It was also determined that she may have an underlying mass and/or atelectasis, as well as a new small pleural effusion and right lower lobe atelectasis. The Patient was admitted inpatient to MountainView in critical care and placed on bilevel positive airway pressure ("BiPap") for severe respiratory acidosis.

20.     On June 2, 2016, her respiratory status deteriorated and required intubation. She underwent thoracentesis with bilateral chest tube placement. The Patient received several units of blood. By the next day, June 3, 2016, she was able to be weaned from the ventilator and placed on BiPap. The Patient continued her hemodialysis regimen for her ESRD while she was hospitalized and necessitated a balloon angioplasty for an occluded dialysis graft. A renal ultrasound on June 11, 2016 showed a mass within her right kidney that was concerning for a neoplasm. A CT of the Patient's abdomen and pelvis on June 12, 2016, demonstrated multiple small cysts in both kidneys, but with respect to the right kidney, the radiologist opined that the masses seen on ultrasound were compatible with malignant transformation of previous dialysis related cysts. There was also the possibility of a metastatic mass in the right adrenal gland. An additional thoracentesis was performed on June 14, 2016. The Patient remained on antibiotics and received nebulizer treatments throughout her hospitalization. Once the Patient was determined to be medically stable and cleared by Pulmonology, she was discharged back to a LTACH on June 23, 2016.

21.     At the time the Patient was transferred to the Hospital, she presented with multiple insurance coverages including BCBSGA as primary, Medicare Parts A & B as secondary, and Nevada Medicaid as tertiary. Per a telephone conference with a BCBSGA representative on June 3, 2016, Medicare was to be the primary payor because the Patient had exceeded the 30-month coordination period due to her ESRD. Under the Medicare Rules, Medicare becomes the primary payor after 30 months due to ESRD. In this case, the Patient had reached the 30-month threshold for ESRD, thereby placing Medicare as the primary payor on her claim. No change in the hierarchy of insurance coverage would be mandated, even as here, where the Patient had exhausted her Medicare benefits. More specifically, the Patient had exhausted her Medicare Part A benefits.

22.     Medicare was initially billed as the primary insurance coverage for this claim on June 28, 2016 with BCBSGA being listed as the secondary payor. Per an EOB with a payment date of July 29, 2016, BCBSGA made a payment of $1,120.78. A subsequent EOB with a payment date of June 23, 2017, shows an additional payment from BCBSGA of $1,962.47. Medicare made its final adjusted payment on the claim on August 3, 2017. As the primary payor's responsibility for its portion of the claim was now finalized, MountainView timely submitted its claim to Anthem NV for forwarding to BCBSGA on February 28, 2018. Through remittance dated March 18, 2018, BCBSGA denied the claim on the basis of it allegedly being untimely filed. Thereafter, MountainView timely filed a first level appeal of the denial on May 22, 2018. Via remittance dated June 7, 2018, BCBSGA stated that providers have no right to appeal for denials on the basis of untimely filing. MountainView subsequently contacted a representative of BCBSGA on June 22, 2018, who advised that the denial was upheld on June 4, 2018 for alleged untimely filing. MountainView subsequently submitted a second level appeal on August 17, 2018. Ultimately, BCBSGA maintained that MountainView was not entitled to a second level appeal and did not make an attempt to conduct a second level appeal review.

23.     BCBSGA has inappropriately denied the Hospital's claim as untimely filed, and its position cannot be maintained. According to Section 2.5 of the Agreement, MountainView has 365 days from the date services are rendered to submit claims to Anthem NV. Moreover, "[i]f the Plan is the secondary payor, the three hundred sixty five (365) day period will not begin until Facility receives notification of primary payor's responsibility". Here, MountainView timely filed its claim with Anthem NV for forwarding to BCBSGA, not only within 365 days of services being rendered, but also within 365 days of notification of the primary payor's responsibility. MountainView timely filed its initial claim with Anthem NV for forwarding to BCBSGA shortly after the Patient was discharged on June 23, 2016. BCBSGA cannot argue that this claim was untimely because it issued payment and an EOB dated July 29, 2016. Moreover, BCBSGA remitted additional payment on the claim on June 23, 2017. Likewise, Medicare's primary responsibility was not finally determined until August 3, 2017, and MountainView submitted its ultimate claim to Anthem NV for forwarding to BCBSGA on February 28, 2018, well within the 365 days proscribed by the Agreement.

24.     In sum, MountainView provided medically necessary services to J.S. and is entitled to payment in full for those services. According to the terms of Agreement, MountainView is entitled to be paid $96,741.41 for the medically necessary services provided to J.S.

25.     The Hospitals have provided pre-suit notice to BCBSGA of its wrongful denial of benefits for Patient C.D. and Patient J.S.'s hospital services.

26.     The Court should therefore determine that BCBSGA's denial of payment to the Hospitals for the treatment provided to the Subscribers described above was a wrongful denial of benefits, and order BCBSGA to pay the Hospitals the total amount due under the Agreement of $128,808.40.

**D.     CAUSES OF ACTION**

**COUNT I- FAILURE TO COMPLY WITH HEALTH BENEFIT PLAN IN VIOLATION OF ERISA**

27.     The foregoing paragraphs are incorporated by reference.

28.     As explained above, the Hospitals provided medically necessary covered services to the Subscribers described above, who were BCBSGA Subscribers. The Hospitals are therefore entitled to be paid the amounts due under the Agreement for that care.

29.     BCBSGA is an indirect Party to the Agreement, as the Agreement applies to the Hospitals' treatment of its Subscribers. The Hospitals are also entitled to payment under the terms of the Subscribers' health insurance policies, because the services at issue were medically necessary covered services that are covered by such Subscribers' health plans.

30.     Upon information and belief, the Subscribers whose hospital admissions are at issue are Subscribers to an employer-sponsored health plan that BCBSGA administers or underwrites. Thus, upon information and belief, the Employee Retirement Income Security Act of 1974 ("ERISA") governs the Subscribers' health plans.

31.     The Hospitals are entitled to enforce the terms of the Subscribers' health insurance plans as the Subscribers' assignee under 29 U.S.C. § 1132(a)(1)(B). Upon admission, the Subscribers signed a form, often referred to as Conditions of Admission, that included an assignment of the Subscribers' health insurance benefits to the Hospitals.

32.     As explained above, the Hospitals provided medically necessary services to the Subscribers at issue. Those services qualify as covered services under the Subscribers' health plans, and BCBSGA is therefore obligated to provide benefits coverage for the medically necessary services provided by the Hospitals.

33.     As explained above, BCBSGA failed to pay the Hospitals for the covered services that it provided to the Subscribers. BCBSGA's wrongful adverse benefit determination for the medically necessary hospital services that the Hospitals provided to the Subscribers breached the terms of the Subscribers' health plans, which the Hospitals have standing to sue under through the Subscribers' assignments of benefits.

34.     As a direct and proximate result of BCBSGA's breach of the Subscribers' health plans, the Hospitals have been damaged in an amount in excess of the jurisdictional limits of this Court. The Hospitals are entitled to recover payment in an amount not less than $128,808.40 for the medically necessary covered services it provided to the Subscribers as pled above.

**COUNT II- BREACH OF CONTRACT (FOR PLANS NOT SUBJECT TO ERISA)**

35.     The foregoing paragraphs are incorporated by reference.

36.     As alleged above, the Hospitals provided medically necessary covered services to the Subscribers whose hospital admissions are at issue, and those services are covered under the terms of the Subscribers' health plans. To the extent that the health plans are not subject to ERISA, the Hospitals are entitled to recover payment under the plans under a common law claim for breach of contract.

37.     Each health plan is a contract between the Subscriber and BCBSGA under which BCBSGA agrees to cover medically necessary covered medical services that the Subscriber receives. The Hospitals have standing to sue for breach of contract for BCBSGA's failure to pay for the medical services that the Subscribers' received from the Hospital because the Subscribers assigned their health insurance benefits to the Hospital.

38.     The Hospitals performed their obligations under the Subscribers' health plans by providing medically necessary covered services to the Subscribers.

39.     All conditions precedent have been performed or have occurred.

40.     BCBSGA breached the Subscribers' health plans by failing to issue payment to the Hospitals at the rates set forth in the Agreement for the medically necessary covered services that the Hospitals provided.

41.     The Hospitals suffered damages as a direct and proximate result of BCBSGA's breach of the Subscribers' health plans; specifically, the Hospitals are entitled to be reimbursed in an amount not less than $128,808.40 under the Agreement for the medically necessary covered services that the Hospitals provided to the Subscribers.

42.     As a further result of BCBSGA's breaches, the Hospitals have been forced to incur attorneys' fees and legal expenses and have suffered damages associated with such fees and expenses which it is entitled to recover as special damages.

### ATTORNEY'S FEES

43.     The foregoing paragraphs are incorporated by reference.

44.     The Hospitals are entitled to an award of attorneys' fees under 29 U.S.C. § 1132(g).

### JURY DEMAND

The Hospitals hereby demand a trial by jury of the above-styled action for all claims for which a jury is available.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Sunrise MountainView Hospital, Inc. d/b/a MountainView Hospital and Southern Hills Medical Center, LLC d/b/a Southern Hills Hospital & Medical Center hereby requests that Defendant Blue Cross Blue Shield Healthcare Plan of Georgia, Inc. be cited to appear and answer this Original Complaint, and that upon final trial and determination thereof, that judgment be entered in favor of the Plaintiffs awarding them the following relief:

A.     An award of damages in excess of $75,000 for the amount due under the Agreement and the terms of the Subscriber's BCBSGA health plan;

B.     Reasonable attorneys' fees and court costs; and

///

///

///

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

C.      Such other and further relief to which the Hospitals may be entitled.

DATED this 27th day of June, 2023.

                                        BAILEY❖KENNEDY

                                        By: */s/ Joshua M. Dickey*_____
                                              JOSHUA M. DICKEY

                                        In Association With:

                                              ADAM D. CHILTON
                                              (WILL COMPLY WITH LR IA-2
                                              WITHIN 14 DAYS)
                                              **POLSINELLI PC**
                                              2950 N. Harwood, Suite 2100
                                              Dallas, Texas 75201

                                        *Attorneys for Plaintiffs*
                                        *Sunrise MountainView, Inc. d/b/a*
                                        *MountainView Hospital; and Southern*
                                        *Hills Medical Center, LLC d/b/a*
                                        *Southern Hills Hospital & Medical*
                                        *Center*